UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN DAWSON,   Case No. 1:09-cv-456

    Plaintiff,   Barrett, J.
       Wehrman, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 17-30) (ALJ's decision)).

**I.**

Plaintiff filed his first application for DIB on April 4, 2001, alleging a disability onset date of July 28, 2000. His application was denied initially and was not appealed. Plaintiff then filed a second application for DIB on August 13, 2002, again alleging a disability onset date of January 28, 2000. (Tr. 41). His application was denied initially and on reconsideration. On February 10, 2004, ALJ Knapp issued a decision denying Plaintiff's claim. Plaintiff did not appeal that decision.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff then filed a third application for DIB on July 16, 2004, alleging the same onset date of January 28, 2000, due to social anxiety disorder, anger, stress, seizures, and back problems. (Tr. 76-78). Plaintiff's claim was denied initially and on reconsideration. (Tr. 36-37, 58-61, 63-65). Plaintiff then applied for Supplemental Security Income ("SSI") on March 2, 2006. (Tr. 524-27). Plaintiff requested a hearing *de novo* before an ALJ. An evidentiary hearing, at which Plaintiff was represented by counsel, was held on December 3, 2007. (Tr. 532-576). Suman Srinivasan testified as a vocational expert.

On May 30, 2008, the ALJ entered his decision denying Plaintiff's claim. The Appeals Council denied review on May 7, 2009; therefore, the ALJ's decision stands as Defendant's final determination. (Tr. 6-8).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since July 28, 2000, the alleged disability onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920 (b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: 1) a history of seizure disorder; 2) intermittent low back pain; and 3) depression with anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as

    defined in 20 CFR 404.1567(c) and 416.967 (c) subject to: 1) alternating sitting and standing at one-hour intervals (with standing for at least five minutes at a time); 2) occasional balancing, stooping, kneeling, and crouching, and no twisting at the waist; 3) no climbing of ropes, ladders, or scaffolds; 4) no exposure to hazards; 5) no driving on the job; 6) low stress jobs with no production quotas and no over-the-shoulder supervision; 7) no requirements to maintain concentration on a single task for longer than 15 minutes at a time; 8) limited contact with co-workers and supervisors and with no teamwork; and 9) no direct dealing with the general public. By definition, medium work ordinarily requires the capacity to lift 25 pounds frequently and 50 pounds occasionally, and to engage in a good deal of sitting, standing, or walking.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 11, 1970, and was 30 years old and defined as a "younger individual" on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. According to undisputed testimony of the vocational expert, the claimant has no transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1560(c), 404.1566, 416.960(c), 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2000, through the date of this decision ((20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-29).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined

3

by the Social Security Regulations and was therefore not entitled to DIB and or SSI.

On appeal, Plaintiff maintains that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians, and in instead, adopting the opinions of non-examining state agency reviewers.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if

4

one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## III.

Plaintiff maintains that the ALJ erred in failing to give deference to the opinion of Plaintiff's treating physicians and psychiatrists, Drs. Goldstick, Chamberlain, Gollamundi. Plaintiff further argues that the ALJ erred in rejecting the opinion of Dr. Sparks, a consultative examining psychologist.

    A.    *Res judicata*

In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the Sixth

Circuit held that a prior ALJ's decision would be *res judicata* regarding a claimant's RFC if no new evidence was presented. The Social Security Administration has taken the position that new and material evidence with respect to a claimant's functional capacity and medical condition is needed in order for a subsequent adjudicator to find a different residual functional capacity. AR 98-4(6).

Here, ALJ McNichols noted that ALJ Knapp had issued a prior decision on February 10, 2004. (Tr. 25, 42). ALJ McNichols found that, while Plaintiff's complaints of back pain had become more prevalent and he was going to pain management, the underlying objective evidence generally remained the same as it was at the previous hearing. (Tr. 26). Based on similar objective evidence and subjective complaints, ALJ Knapp found that Plaintiff had the RFC to perform heavy work.[2]

Upon careful review, the undersigned agrees that ALJ Knapp's findings regarding Plaintiff's back pain are entitled to *res judicata*, as the record does not contain any new or material evidence that would overturn the previous decision.

However, since ALJ Knapp's decision, there has been additional evidence relating to Plaintiff's mental impairments that warrants review.

B.  *Evidence relating to Plaintiff's mental impairments since February 2004*

Plaintiff has a history of depression and anxiety. (Tr. 545). On February 24, 2004,

---

[2] Heavy work involves lifting up to 100 pounds occasionally and 50 pounds frequently. 20 C.F.R. § 404.1567(d).

6

just after ALJ Knapp's initial unfavorable decision, Plaintiff was hospitalized with violent thoughts. (Tr. 183). Plaintiff was admitted to the psychiatric floor after stating he felt like he was "on the edge of exploding" and "may have to pound somebody if things go any worse." (Tr. 183). After becoming increasingly agitated, Plaintiff was admitted to the emergency room on February 25, 2004. (Tr. 188). Plaintiff felt like he was "about to go off" and tested positive for marijuana and alcohol. (Tr. 188). The discharge diagnosis was depressive disorder NOS, anxiety disorder NOS, obsessive compulsive disorder, and seizure disorder and back pain. GAF was 18.[3] (Tr. 191).

Plaintiff's treating psychiatrist, Dr. Freeland completed a mental status questionnaire on August 8, 2004. She stated that she had treated Plaintiff since May 8, 2001, and diagnosed anxiety disorder and seizure disorder. Dr. Freeland found that Plaintiff could only remember very limited, simple directions; his attention was very limited; he was easily distracted and did not finish projects. She further found that he rarely engaged in social interaction, was increasingly isolating himself, and had social anxiety around other people. (Tr. 228-229, 235-236).

In December 2004, Plaintiff was again hospitalized for violent tendencies associated with his denial of Social Security benefits. Plaintiff threatened people at Comprehensive Counseling and at the Social Security office, and was thereafter brought to

---

[3] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score (0-100) within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. A GAF score of 11-20 indicates some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent, manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e.g., largely incoherent or mute). . *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR).

the hospital by police. (Tr. 238). According to police, Plaintiff intimated that he bought a lot of guns and was going "to take care of this situation." (Tr. 253). Plaintiff stated that if "he [had] to go he [was going] to take everybody with him." (Tr. 253). Plaintiff was diagnosed with acute anxiety stress reaction/psychosis, not otherwise specified. (Tr. 241). The diagnosis was organic mood disorder with psychosis and seizure disorder. He was assigned a GAF of 20. (Tr. 244). During his hospitalization, his guns were removed from his home. (Tr. 247, 250).

Plaintiff received psychiatric care from Comprehensive Counseling beginning in May 2001. (Tr. 231). However, because Comprehensive Counseling summoned police after Plaintiff threatened their staff, Plaintiff subsequently "fired" the agency from treating him. (Tr. 234). At that time, Plaintiff's primary therapist, Ms. Frederick, noted that Plaintiff is viewed as 'high risk for potential violence.' (Tr. 234). Additionally, treatment notes from Comprehensive Counseling indicate that Plaintiff appeared "to be in a further downward slide" since August 2004.

Plaintiff was seen by Dr. Jose Collares, a psychiatrist, on February 16, 2005. Dr. Collares related that Plaintiff was no longer being seen by Dr. Freeland after his involuntary hospitalization stemming from an incident in her office. Plaintiff was described as guarded with a somewhat blunted affect and some depression. His insight and judgment was impaired and he was minimizing his symptoms. (Tr. 259). The diagnosis was r/o depressive disorder NOS, r/o schizoaffective disorder and r/o obsessive compulsive disorder. (Tr. 260).

8

On July 16, 2005, Plaintiff's was evaluated by Dr. Steve Sparks, psychologist, at the request of the state agency. Plaintiff stated that he had memory problems as a result of his seizures. (Tr. 263). Dr. Sparks noted that Plaintiff had a severe limitation in his ability to pay attention. Plaintiff related violent thoughts toward others and other symptoms of psychosis. Plaintiff spent time at a pool hall, did very few household chores, and worked in the yard. (Tr. 266). Dr. Sparks observed that Plaintiff squirmed, had slow speech with tangential thought processes that were hard to follow, had a flat affect, and had behaviors consistent with anxiety. His judgment, insight, and reasoning were fair. (Tr. 267). Plaintiff scored in the low average range of intellectual functioning on the WAIS III. His low functioning on immediate memory could adversely affect his daily living ability. He "showed very significant difficulty in retrieving recently learned information after a 25-35 minute delay." (Tr. 268). His general memory index was in the extremely low range and would affect his daily activities. *Id.*

Dr. Sparks further stated that on the Brief Psychiatric Scale (BPRS), Plaintiff's statements and presentation suggested that at the time of the present evaluation, he experienced clinically significant anxiety, depression, hostility, suspiciousness, unusual thought content, blunted affect, emotional withdrawal, motor retardation, and tension. (Tr. 270). He reported that Plaintiff's ability to relate to others was extremely impaired; his ability to understand, remember, and carry out instructions was markedly impaired; his ability to perform simple repetitive tasks was moderately impaired; and his ability to withstand work stress was extremely impaired. (Tr. 271).

Plaintiff began counseling with Advanced Therapeutics in April 2006 and continued to receive counseling until February 2007 with Dr. Gollamudi. (Tr. 458- 74). In February 2007, Dr. Gollamudi opined that Plaintiff had poor or no ability to: relate to coworkers, deal with the public, deal with work stresses, function independently, maintain attention/concentration, demonstrate reliability, or behave in an emotionally stable manner (Tr. 455-57).

Additionally, in August 2004, Dr. Goldstick, Plaintiff's treating neurologist provided an "Attending Physician's Statement of Disability," in which he stated that Plaintiff was permanently and totally disabled based on "seizures and psychological and psychiatric disorders" (Tr. 425). Dr. Goldstick based this on an MRI from 2000 which "demonstrated mesiotemporal sclerosis as an etiology for complex partial seizures [with] secondary generalization." (Tr. 425). In October 2006, Dr. Goldstick provided two opinions about Plaintiff's ability to perform work activities. Dr. Goldstick opined that Plaintiff was incapable of performing the mental aspects of work based on rage reaction and impulse control disorder. (Tr. 402-07). Dr. Goldstick also felt Plaintiff suffered side effects from his prescribed medication that provided for further limitations, including severe somnolence, disorientation and poor concentration. (Tr. 408). Also, in October 2006, Dr. Goldstick noted his belief that Plaintiff was incapable of performing even sedentary work based on his seizure disorder, rage reaction and impulse control problems (Tr. 409-13).

  C. *ALJ's consideration of Plaintiff's mental impairments*

In his decision, however, the ALJ gave no controlling or deferential weight to the

10

findings of Plaintiff's treating physicians and psychiatrists relating to Plaintiff's mental impairments. The ALJ also rejected the findings of Dr. Stark, the state agency psychologist who provided a consultative examination. Plaintiff asserts, however, that the opinions of Drs. Goldstick, Chamberlain, Gollamudi, and Sparks were entitled to controlling weight.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). In weighing the various opinions and medical evidence, the ALJ must consider pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6).

Should the ALJ reject a treating physician's opinion, the ALJ must "give good reasons" for not giving weight to that opinion in the context of a disability determination. *Wilson*, 378 F.3d at 544.

Here, the ALJ afforded no controlling or deferential weight to Dr. Goldstick's opinions, finding that they are inconsistent with other substantial evidence, including his own progress notes. Specifically, the ALJ noted that the overall record indicates that Plaintiff's seizures do not occur very often, and Dr. Goldstick's own progress notes generally reflect normal physical functions and a stable neurological status. (Tr. 27). The

ALJ also rejected Dr. Goldstick's opinions regarding Plaintiff's mental impairments because Dr. Goldstick, a neurologist, "strayed well beyond his area of expertise" (Tr. 27). 20 C.F.R. § 404.1527(d)(5); *See also Thacker v. Sec'y of Health & Human Servs.*, No. 90-5546, slip op. at 7 (6th Cir. Dec. 12, 1990) (no evidence that physician was a specialist in the area of mental impairments); *Boyce v. Sullivan* 754 F.Supp. 126, 128 (N.D.Ill. 1990) (a neurologist is not the appropriate person to evaluate mental impairments).

The ALJ's decision in this regard is supported by substantial evidence. The record shows that Plaintiff experienced seizures very infrequently (Tr. 240, 382, 386, 428) and these "seizures" were often thought to be other signs, including syncope (Tr. 300), anxiety (Tr. 415), or lack of sleep (Tr. 432). Notably, when Plaintiff was hospitalized for violent tendencies in December 2004, the examining physician noted that Plaintiff reported that "he has not had a seizure since he was 20, he is currently now 34." (Tr. 238).

In addition, Dr. Goldstick's own treatment notes were certainly not definitive, as he was unsure Plaintiff was even experiencing seizures. (Tr. 415, 418). Dr. Goldstick noted during treatment that Plaintiff was neurologically stable (Tr. 424) and had a relatively normal EEG. (Tr. 422). The ALJ also noted that an April 2004 CT scan and an EKG and CT scan in December 2005 revealed no significant abnormalities. (Tr. 201, 295, 301). Furthermore, during his examinations of Plaintiff, Dr. Goldstick repeatedly noted that Plaintiff was oriented and his affect was appropriate. (Tr. 416, 419, 423). Plaintiff's "higher cortical functions appear[ed] to be intact" and Plaintiff exhibited no abnormalities. (Tr. 416, 419, 423).

12

The ALJ's rejection of Dr. Chamberlain and Dr. Gollamundi's opinions are also substantially supported by the record.  The ALJ found that Dr. Chamberlain's October 2006 opinion that Plaintiff had severe mental impairments making Plaintiff incapable of performing most work-related mental duties was unsupported by his treatment notes.  ALJ McNichols noted that Dr. Chamberlain's treatment notes contained almost no clinical observations regarding Plaintiff's mental state, beyond simply checking blocks to indicate Plaintiff's affect was flat and his insight was impaired on a few occasions.  (Tr. 378, 380).

The ALJ rejected Dr. Gollamundi's February 2007 opinion relating to Plaintiff's ability to perform work activities because Dr. Gollamudi provided no clinical justification for his opinion whatsoever, despite requests for such findings.  (Tr. 27, 456-57).  Specifically, treatment notes from Advanced Therapeutics suggest Plaintiff was improving greatly with treatment and were generally inconsistent with Dr. Gollamudi's opinion.  (Tr. 459, 506-13).

Notably, November 2006 treatment notes from Advanced Therapeutics indicate that Plaintiff was depressed and anxious, and his symptoms were not improving.  (Tr. 461).  However, by January 2007, Plaintiff's symptoms had improved and no abnormal findings were made.  (Tr. 459).  Plaintiff showed no signs of depression, anger, or anxiety.  (Tr. 459).  Plaintiff was simply instructed to continue with the same medication.  (Tr. 459).  Furthermore, monthly progress notes from March through November 2007 showed continued improvement of Plaintiff's symptoms.  (Tr. 506-13).

Lastly, with respect to Dr. Sparks, the ALJ found that Dr. Sparks' opinion of severe

limitations was unsupported by his clinical findings of a mood disorder (based on a general medical condition) and cognitive disorder. (Tr. 27, 271). The ALJ found that Dr. Sparks' description of Plaintiff's activities and general observations do not appear consistent with total disability. (Tr. 27). Dr. Sparks did not diagnose Plaintiff with either depression or anxiety disorder. (Tr. 271). Furthermore, Dr. Sparks' general observations were not consistent with a finding of total disability. Dr. Sparks noted Plaintiff's mood to be subdued but pleasant. (Tr. 267). Dr. Sparks also noted Plaintiff had fair insight and judgment, normal attention and concentration, and adequate decision-making skills. (Tr. 267).

Plaintiff argues that ALJ erred in relying on Plaintiff's daily activities, in part, to reject Dr. Sparks' opinion and to lessen Plaintiff's credibility. However, Plaintiff's daily activities, particularly his ability to socialize at a pool hall on a daily basis, showed significant inconsistencies with both Dr. Sparks' and Plaintiff's depictions of the severity of his mental impairments. As noted by the Commissioner, Plaintiff's ability to leave home on a daily basis and socialize with others is properly considered to challenge the validity of Plaintiff's contention, at various points, that he was prone to angry outbursts, paranoia, and generally incapable of being around others in a work environment. *Hash v. Commissioner of Social Sec.*, 309 Fed.Appx. 981, 987, 2009 WL 323101, 6 (6th Cir. 2009) (Plaintiff's reported daily activities also provide substantial evidence for the ALJ's rejection of treating physician's disability assessment).

The record also contains the opinions of four state agency physicians each of whom

affirmed ALJ Knapp's prior mental RFC. In September 2004, Dr. Coffman, a state agency physician, reviewed Plaintiff's record and provided a mental RFC assessment. After reviewing Plaintiff's record and finding some moderate, but no marked, limitations, Dr. Coffman felt that the record supported adopting ALJ Knapp's mental RFC finding of February 10, 2004. (Tr. 218).[4]

Additionally, on August 5, 2005, Dr. Rudy, a state agency physician, reviewed Plaintiff's record, including Dr. Sparks' findings, and also indicated that ALJ Knapp's mental RFC finding of February 10, 2004 was consistent with the record. (Tr. 276). Dr. Rudy found that "although [Dr. Sparks] opines marked limitations in work-related behaviors, the signs, symptoms and test results reported show no significant worsening from those described in the ALJ decision" in February 2004. (Tr. 276). On August 10, 2005, Dr. Cho affirmed the September 2004 mental RFC assessment of Dr. Coffman. (Tr. 293).

Furthermore, the ALJ did not reject the opinions of Drs. Goldstick, Chamberlain, Gollamudi, and Sparks in their entirety, and incorporated such findings that were consistent with the evidence of record into Plaintiff's RFC. ALJ McNichols accommodated Plaintiff's history of depression and anxiety by including numerous limitations in Plaintiff's RFC. ALJ McNichols' RFC provided Plaintiff with low stress work, limiting contact with co-workers and supervisors and prohibited teamwork and

---

[4] ALJ Knapp found Plaintiff had the following mental restrictions: (1) no contact with the public; (2) no work involving over-the-shoulder job supervision; (3) no work as part of a team; and (4) only low stress jobs (Tr. 45).

15

dealing with the public. (Tr. 25-26, 45). ALJ McNichols included also an additional limitation that Plaintiff could not concentrate on a single task for more than 15 minutes.

Based on the foregoing, the undersigned finds that the ALJ clearly articulated his rationale for the weight assigned to each opinion and reasonably discounted the opinions of Drs. Goldstick, Chamberlain, Gollamudi, and Sparks as they were inconsistent with and unsupported by substantial evidence in the record.

It is the duty of the ALJ to evaluate the totality of the objective medical record, weigh the evidence, and resolve any inconsistencies in the record. *Smith v. Astrue*, Case No. 08-180-DLB, 2009 WL 4930893, 3 (E.D.Ky. December 15, 2009) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). As noted above, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Felisky,* 35 F.3d at 1035. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. *Id*. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Id.*

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: August 31, 2010                              s/ J. Gregory Wehrman
                                                                                                                              J. Gregory Wehrman
                                                                                                                              United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN DAWSON,                      Case No. 1:09-cv-456

      Plaintiff,                         Barrett, J.
                                       Wehrman, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## NOTICE

      Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).