UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Steven Dawson,

    Plaintiff,                                      Case Action No.: 1:09-cv-456

    v.

Commissioner of Social                     Judge Michael R. Barrett
Security Administration,

    Defendant.

## ORDER

    This is a Social Security appeal brought under 42 U.S.C. § 405(g). Before the Court is Magistrate Judge J. Gregory Wehrman's August 31, 2010, Report and Recommendation ("Report") (Doc. 21). In the Report, Magistrate Judge Wehrman recommends that the Commissioner's decision be affirmed because it is supported by substantial evidence. (Doc. 21, 16.)

    The parties were given proper notice, pursuant to 28 U.S.C. § 636(b)(1)(C), including notice that the parties would waive further appeal if they failed to file objections to the Report in a timely manner. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).[1] Plaintiff filed Objections to the Report (Doc. 22), and Defendant filed a Response (Doc. 24).

    For the reasons stated below, the Court overrules Plaintiff's Objections and the Report is ADOPTED. Accordingly, the Commissioner's decision is AFFIRMED.

---

[1] A notice was attached to the Report regarding objections. (Doc. 21, 18.)

1

**I.     Background**

The Report, supplemented by the ALJ's decision, accurately details the facts and procedural history of this case. (*See* Doc. 21, 1–4; Tr. 17–30.) They will not be repeated here.

On appeal, Plaintiff argues that the Magistrate Judge erred in finding substantial evidence to support the ALJ's decision because the ALJ rejected the opinions of Plaintiff's treating physicians and of defendant's own examining psychologist, relying instead on the opinions of state agency reviewers. (Doc. 22, 4.) This is the same general argument made in Plaintiff's Statement of Errors. (Doc. 8, 1.) More specifically, Plaintiff argues that the following were errors of the Magistrate Judge and the ALJ: (1) the rejection of Dr. Goldstick's opinion; (2) the rejection of Dr. Chamberlain's opinion; (3) the rejection of Dr. Gollamudi's opinion; (4) the rejection of Dr. Sparks' opinion (Doc. 22, 8); (5) reliance on the opinions of state agency reviewers (Doc. 22, 15); (6) not properly addressing Plaintiff's violent episode and resulting hospitalization (Doc. 22, 11); and (7) an erroneous reliance on Plaintiff's level of daily activities (Doc. 22, 17).[2] Each of these will be addressed in turn.

**II.    Analysis**

    **A.     Standard of Review**

When objections are received to a magistrate judge's Report and Recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.

---

[2] Note that Plaintiff did not organize each of these arguments as distinctly as the Court has listed them here. Many of Plaintiff's objections overlap and flow into one another (*see* Doc. 22), but for the sake of addressing everything thoroughly and efficiently, this is how the Court organizes its analysis.

R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the Social Security Commissioner's decision is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (internal quotations omitted).

The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such findings. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even

if substantial evidence also exists in the record to support a finding of disability. *Felisky*, 35 F.3d at 1035 (*citing Mullen*, 800 F.2d at 545). However, even where there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (*quoting Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Social Security Act defines disability as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 20 C.F.R. § 404.1505(a). Disability claims are evaluated under a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on the claimant through the first four steps; the burden shifts to the Social Security Administration in step five. *Preslar v. Sec'y Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). However, the claimant bears the ultimate burden of proving that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a).

Step one of the sequential process determines whether the claimant is engaging in substantial gainful activity. If not, the inquiry moves to step two, which determines whether the claimant's impairments, individually or in combination are "severe." If a severe impairment is found, step three asks whether the claimant's impairment meets or medically equals the requirements of any impairment in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is not of listing-level severity, then step four asks whether the claimant has the residual functional

capacity ("RFC") to perform past relevant work. If the claimant shows that she cannot perform past relevant work because of impairments, the Social Security Administration, in step five, must then identify other jobs existing in significant numbers in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4). If at any point it is determined that the claimant is or is not disabled, the inquiry stops. *Id.*

Here, the ALJ found that although Plaintiff was unable to perform any past relevant work, there were significant numbers of jobs in the national economy that the Plaintiff could perform. (Tr. 28.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 29–30.)

**B.  First Objection**

Plaintiff's first objection argues that the opinion of Dr. Goldstick, Plaintiff's treating neurologist, was improperly rejected. (Doc. 22, 8.) As the ALJ detailed, Dr. Goldstick opined that Plaintiff was "totally disabled." (Tr. 26.) The ALJ rejected this opinion because it was inconsistent with other substantial evidence and because it was outside Dr. Goldstick's area of expertise. (Tr. 27; Doc. 22, 8.)

The ALJ is not bound by a treating physician's conclusory statement that the claimant is "disabled." *Miller v. Sec'y of Health & Human Servs.*, 843 F.2d 221, 224 (6th Cir. 1988) ("The determination of disability is the prerogative of the Secretary and a physician's opinion is not conclusive of the ultimate fact of disability.") However, the ALJ must give the opinion of a treating source controlling weight if the opinion is, "'well-supported by medically acceptable clinical and laboratory diagnostic techniques,'" and "'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. §

5

404.1527(d)(2)). On a claim for social security disability benefits, medical opinions and diagnoses of treating physicians must be given "substantial deference—and, if the opinion is uncontradicted, complete deference." *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983)). The regulations require "good reasons" for any determination of weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). If the ALJ decides to discount the treating physician's medical opinion, the ALJ must provide, "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (*citing* Soc. Sec. Rul. 96-2p).

Plaintiff argues that there was substantial evidence supporting Dr. Goldstick's opinion because, "Dr. Goldstick's office notes support his opinion." (Doc. 22, 11.) Plaintiff then cites to and quotes many of Dr. Goldstick's progress notes, but none of them contradicts the ALJ's ultimate finding. In discussing this, Magistrate Judge Wehrman wrote the following:

> The ALJ's decision in this regard is supported by substantial evidence. The record shows that Plaintiff experienced seizures very infrequently and these "seizures" were often thought to be other signs, including syncope, anxiety, or lack of sleep. Notably, when Plaintiff was hospitalized for violent tendencies in December 2004, the examining physician noted that Plaintiff reported that "he has not had a seizure since he was 20, he is currently now 34."
>
> In addition, Dr. Goldstick's own treatment notes were certainly not definitive, as he was unsure Plaintiff was even experiencing seizures. Dr. Goldstick noted during treatment that Plaintiff was neurologically stable and had a relatively

6

> normal EEG. The ALJ also noted that an April 2004 CT
> scan and an EKG and CT scan in December 2005 revealed
> no significant abnormalities. Furthermore, during his
> examinations of Plaintiff, Dr. Goldstick repeatedly noted that
> Plaintiff was oriented and his affect was appropriate.
> Plaintiff's "higher cortical functions appear[ed] to be intact"
> and Plaintiff exhibited no abnormalities.

(Doc. 21, 12) (internal citations omitted.) As this demonstrates, the ALJ's finding that Dr. Goldstick's opinion was inconsistent with other substantial evidence, and even with his own notes, is well supported. For these reasons, the Court overrules Plaintiff's objection that Dr. Goldstick's opinion of disability was improperly rejected based on a lack of substantial evidence.

Dr. Goldstick's opinion was also rejected because it was outside his area of expertise. (Tr. 27.) Plaintiff argues that this is in error because "the record shows a possible organic cause of Plaintiff's rage issues." (Doc. 22, 12.) Plaintiff goes on to state that his "seizure disorder . . . has caused ongoing damage to his brain as documented by the objective medical tests and that this damage has caused his violent tendencies." (Doc. 22, 13.) But this is speculation—Plaintiff cites to no evidence or tests that come to this conclusion. (*See* Doc. 22.) In addition, the places in the transcript Plaintiff does cite to do not support his arguments. In one spot Dr. Goldstick states, "He [Plaintiff] continues to have *slight* rage reactions, but is *improved* on the Klonopin 1 mg twice a day and Xanax on an as-needed basis." (Tr. 448) (emphasis added.) "Slight" reactions that are "improved" upon medication do not indicate ongoing brain damage as Plaintiff claims. In another spot, Dr. Goldstick himself acknowledges his lack of expertise: "He [Plaintiff] has been given the okay to return to work from a standpoint neurologically *if he can get a clearance from psychiatry* relating to his rage

7

reaction and his emotional disorder." (Tr. 445.) By his own words, Dr. Goldstick recognizes that he does not have expertise beyond his field of neurology. Thus, the Court overrules Plaintiff's objection that Dr. Goldstick's opinion was improperly rejected because it was outside his area of expertise.

As is required, *see Wilson*, 378 F.3d at 544 (*citing* Soc. Sec. Rul. 96-2p), the ALJ provided specific reasons supported by the evidence, and he clearly articulated the weight given to Dr. Goldstick's opinion. The ALJ stated the following:

> Dr. Goldstick's opinions are accorded no controlling or deferential weight as they are poorly supported by detailed objective findings and are inconsistent with other substantial evidence, including his own progress notes. . . . As to claimant's mental problems, Dr. Goldstick strayed well beyond his area of expertise, while the record as a whole indicates that [Plaintiff] functions at a higher level mentally than Dr. Goldstick allows for.

(Tr. 27.) These are "good reasons" under 20 C.F.R. § 404.1527(d). For the foregoing reasons, Plaintiff's first objection—that the ALJ improperly rejected the opinion of Dr. Goldstick—is overruled.

**C.     Second Objection**

Plaintiff's second objection argues that the opinion of Dr. Chamberlain, Plaintiff's family doctor, was improperly rejected. (Doc. 22, 8.) This analysis applies the same legal standard as in Plaintiff's first objection. (The same is true for the third and fourth objections below.) Dr. Chamberlain opined that Plaintiff could not perform either full-time light or sedentary work. The ALJ found this to be inconsistent with other substantial evidence. (Tr. 27.) Plaintiff argues that this is incorrect because Dr. Chamberlain had reports from Dr. Goldstick and because he personally observed Plaintiff, making office notes to that effect. (Doc. 22, 14.)

8

It is true that Dr. Chamberlain observed that Plaintiff was anxious, showed poor insight, had questionable thought processes, was in distress on one occasion, and on another occasion was antagonistic and oppositional (Doc. 22, 14), but these conditions do not support an opinion of disability. None of Dr. Chamberlain's treatment notes leads to a finding that Plaintiff could not perform either full-time light or sedentary work. As the ALJ stated, "the pessimistic opinions of Dr. Chamberlain are not entitled to either controlling weight or deference in the absence of detailed supporting objective data and in view of the inconsistency of his opinion with other substantial evidence." (Tr. 27.) Such objective data was missing. (*See* Tr.) The ALJ was correct to find a lack of substantial evidence supporting Dr. Chamberlain's opinion. And as is required, the ALJ clearly articulated the weight given to Dr. Chamberlain's opinion, and he gave good reasons for that weight. For these reasons, Plaintiff's second objection is overruled.

### D. Third Objection

Plaintiff's third objection argues that the opinion of Dr. Gollamudi, Plaintiff's treating psychiatrist, was improperly rejected. (Doc. 22, 8.) Dr. Gollamudi's opinion was that Plaintiff had "poor or no mental ability to handle stress, concentrate, interact with co-workers or the public, demonstrate reliability, or behave in an emotionally stable manner." The ALJ gave this little weight because Dr. Gollamudi gave no clinical justification for his opinions. Furthermore, the ALJ recognized that according to Dr. Gollamudi's progress notes, Plaintiff's emotional status improved with treatment. (Tr. 27.)

In response, Plaintiff argues that "[o]ut of the three hundred and forty three pages of medical evidence, only nine pages of so called improvement were cited and in those

nine pages there is no indication of a marked improvement." (Doc. 22, 16.) Weighing evidence does not entail counting pages, so Plaintiff's argument in this respect is not well taken.

As to Plaintiff's argument that the record shows no indication of a marked improvement or that improvements "never lasted long enough . . . for [Plaintiff] to perform substantial gainful activity," (Doc. 22, 16) this is not reflected in the record. Magistrate Judge Wehrman summarized Dr. Gollamudi's treatment notes as follows:

> November 2006 treatment notes . . . indicate that Plaintiff was depressed and anxious, and his symptoms were not improving. However, by January 2007, Plaintiff's symptoms had improved and no abnormal findings were made. Plaintiff showed no signs of depression, anger, or anxiety. Plaintiff was simply instructed to continue with the same medication. Furthermore, monthly progress notes from March through November 2007 showed continued improvement of Plaintiff's symptoms.

(Doc. 21, 13) (internal citations omitted.) "No abnormal findings" and "no signs of depression, anger, or anxiety," appear to be "marked improvements" in this Court's eyes. Plaintiff's conclusory statements to the contrary are unsupported. Furthermore, there is no evidence to support Plaintiff's argument that these improvements were not long lasting. (*See* Tr.) Plaintiff cites to no such evidence (*See* Doc. 22) and this Court has found none on its own (*See* Tr.).

The ALJ correctly found a lack of clinical justification for Dr. Gollamudi's opinion of disability. He further clearly articulated the weight given to Dr. Gollamudi's opinion, and he gave good reasons for that weight. For the foregoing reasons, Plaintiff's second objection is overruled.

### E.    Fourth Objection

Plaintiff's fourth objection is that the ALJ improperly rejected the opinion of Dr. Sparks, a consultative examining psychologist who evaluated Plaintiff at the request of the state agency. (Doc. 22, 7–8.) He reported that Plaintiff's test results suggested "clinically significant anxiety, depression, hostility, suspiciousness, unusual thought content, blunted affect, emotional withdrawal, motor retardation, and tension," and that Plaintiff's ability to relate to and work with others was impaired. (Tr. 270–71.) The ALJ found that Dr. Sparks' "clinical exam, description of [Plaintiff's] activities, and general observations do not appear to be consistent with total disability." (Tr. 27.) Plaintiff argues that was an error and that Dr. Sparks' opinion was based on clinical findings. (Doc. 22, 14.)

However, as the Magistrate Judge recognized, Dr. Sparks did not diagnose Plaintiff with either depression or with anxiety disorder. Instead, he found a mood disorder and a cognitive disorder. (Doc. 21, 13–14; Tr. 271; Tr. 22.) Additionally, Dr. Sparks noted that Plaintiff's insight and judgment was fair, he showed "adequate common sense abilities," a capability of "living independently," and his "ability to maintain attention to perform simple, repetitive tasks" was only moderately impaired. (Tr. 267, 271.) Dr. Sparks' report of Plaintiff's daily activities also showed "significant inconsistencies" with a conclusion of severe mental impairments. (Doc. 21, 14.) All told, there was substantial evidence for the ALJ's conclusion that "the report of Dr. Sparks does not provide a sufficient basis for finding [Plaintiff] to be disabled." (Tr. 27.)

Despite this finding, the ALJ did not discount Dr. Sparks' opinion entirely. It was made part of the ALJ's RFC determination. (*See* Tr. 26) (Plaintiff "is limited from carrying out any complex or detailed instructions in view of some possible problems in

11

information retrieval, as suggested by Dr. Sparks' report.") Many of the ALJ's RFC findings relate directly to Dr. Sparks' evaluation of Plaintiff's work-related mental abilities. (*Compare* Tr. 25 ("low stress jobs with no production quotas and no over-the-shoulder supervision"; "no requirement to maintain concentration on a single task for longer than 15 minutes"; "limited contact with co-workers and supervisors and with no teamwork"; and "no direct dealing with the general public") *with* Tr. 271 ("mental ability to relate to others . . . appears to be extremely impaired"; "mental ability to understand, remember, and follow instructions appears to be markedly impaired"; and "mental ability to withstand the stress and pressures associated with day-to-day work activity appears to be extremely impaired").) As the ALJ stated, Dr. Sparks' findings were "not much different" from the findings of other Bureau of Disability Determination reviewing psychologists (Tr. 27), and Plaintiff showed "no significant worsening since the prior hearing decision of February 10, 2004" (Tr. 22). It is not that the ALJ rejected Dr. Sparks' opinion entirely, it is just that his opinion did not provide a sufficient basis for a finding of disability. (Tr. 27.) For the foregoing reasons, this Court overrules Plaintiff's fourth objection.

    **F.**    **Fifth Objection**

Plaintiff's fifth objection argues that the ALJ improperly relied on the opinions of state agency reviewers. (Doc. 22, 15.) The record contains the opinions of four state agency physicians, each of whom affirmed a prior ALJ's mental RFC determination. (Doc. 21, 14–15.) Plaintiff contends that relying on these opinions over those of Plaintiff's treating physicians was an error because the regulations and case law require that more weight be given to opinions of examining physicians who have an established

12

treatment relationship with a claimant. (Doc. 22, 15–16) (*citing* 20 C.F.R. § 404.1527, Soc. Sec. Rul. 96-6p, and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir 1994).)

As both the ALJ and the Magistrate Judge explained, In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit made it clear that principles of res judicata apply to administrative proceedings. *Id.* at 842. Thus, an ALJ is obligated to follow the findings of fact made by a previous ALJ relative to the same claimant absent new or material evidence of a change in the claimant's condition. *Id.* Social Security Acquiescence Ruling 98-3(6) confirms this by instructing that the agency must adopt "a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding. . . ." 63 Fed. Reg. 29770-01 (June 1, 1998) (available at 1998 WL 274051).

This is relevant because the ALJ in Plaintiff's current proceedings (ALJ McNichols) had a prior ALJ's decision to consider (ALJ Knapp). (Doc. 21, 6; Tr. 41–49.) ALJ McNichols found as follows:

> For the most part, [Plaintiff's] subjective symptoms concerning seizures, depression, and anxiety are quite similar to those that he expressed in connection with the earlier hearing decision of February 10, 2004 [ALJ Knapp's decision]. His back complaints perhaps are more prevalent now, and he seems to have been committed to long-term treatment at a pain clinic, but the underlying medical findings regarding his spine are not remarkable. In fact, the objective diagnostic and clinical evidence is much the same as before.

(Tr. 25–26.) ALJ McNichols went on to conclude that because the state agency reviewers opined that "little had changed, medically speaking, since the February 20, 2004 hearing decision," and because the state agency reviewers had "essentially

adopted the ALJ functional findings from the February 2004 hearing decision," there was no basis for "any major deviations from the RFC findings of the prior hearing decision, except as outlined below." (Tr. 26.) In short, because the state agency reviewers agreed with the prior ALJ's findings—concluding that there were no new or material evidence of major changes in the Plaintiff's condition—the ALJ's prior decision was due res judicata effect. The ALJ then went on to do an extensive review of the new, material evidence, changing the prior ALJ's RFC determination of modified heavy work (Tr. 48) to modified medium work (Tr. 25, 26.) Magistrate Judge Wehrman supplemented this with an extensive review of his own, reviewing the same evidence the ALJ considered. (Doc. 21, 6–10.) There is no need for this Court to do the same review to answer the same question that the ALJ and the Magistrate Judge have already answered in detail. This Court adopts the Magistrate Judge's Report in that respect.

Furthermore, this Court recognizes that an ALJ is not bound by a treating physician's conclusory statement that the claimant is "disabled." *Miller v. Sec'y of Health & Human Servs.*, 843 F.2d 221, 224 (6th Cir. 1988). "The determination of disability is the prerogative of the Secretary and a physician's opinion is not conclusive of the ultimate fact of disability." *Id.* Social Security Ruling 96-5p clarifies that the issues of "[w]hether an individual is 'disabled,'" "[w]hat an individual's RFC is," and "[w]hether an individual's RFC prevents him or her from doing past relevant work" are not "medical issues." Rather, they are "administrative findings." Soc. Sec. Rul. 96-5p (available at 1996 WL 374183). "The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner." *Id.*

14

Thus, where Dr. Goldstick stated that Plaintiff is "disabled" and "unable to work" (Tr. 414, 417, 420, 421, 422), this opinion is on a matter not within his purview.  In contrast, another treating physician, Dr. Chamberlain, was unwilling to conclude that Plaintiff was unable to work "a normal work day and work week without interruption." (Tr. 395.)  Instead, he noted that Plaintiff was reliable (Tr. 394), was able to sustain an ordinary routine without special supervision (Tr. 396), and was able to understand, remember, and carry out simple work instructions without requiring close supervision (Tr. 393).  Therefore, even on the question of whether Plaintiff is "disabled" and "unable to work"—a question reserved to the Commissioner—Plaintiff's treating physicians were of divided opinion.  Also in contrast are the reports of the state agency reviewers.  (*See* Tr. 203–24; 273–93.)  They found that Plaintiff's "symptoms and behaviors are consistent with those in the [February 2004] ALJ decision."  (Tr. pp. 273, 276, 26.) Because the decision of whether a claimant is "disabled" is one within the purview of the Commissioner, the state agency reviewers' opinions deserve greater weight on this question.  Soc. Sec. Rul. 96-5p.  Regardless, if an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why and provide "good reasons."  20 C.F.R. § 404.1527(d)(2).  As was discussed above, the ALJ did this on all occasions.  Furthermore, the Court reiterates that it is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the Court may have decided the issue differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).  When evidence is contradictory, the Court cannot "try the case de novo, nor resolve conflicts in evidence."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Finally, Plaintiff cites *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994) for the proposition that a "non-examining psychologist could be given deference over the opinion of a consulting psychologist only where the non-examining psychologist had access to the entire medical record and a chance to observe the claimant during an administrative hearing." (Doc. 22, 16.)  Plaintiff argues that because that did not occur here, their opinions do not warrant enough weight to rise above those of Plaintiff's treating physicians.  (Doc. 22, 16.)  However, as numerous courts have recognized, there is no such rule—Plaintiff reads *Barker* much too broadly.  *Bourdo v. Comm'r of Soc. Sec.*, No. 1:06-cv-862, 2008 WL 724722, at *2 (W.D. Mich. Mar. 17, 2008); *Bentley v. Astrue*, No. 07-209-DLB, 2008 WL 4059871, at *5 (E.D. Ky. Aug. 28, 2008); *Rogers v. Astrue*, No. 08-162-DLB, 2009 WL 691989, at *2–3 (E.D. Ky. Mar. 13, 2009); *Swafford v. Astrue*, No. 09-265-KSF, 2010 WL 2612325, at *4 (E.D. Ky. June 25, 2010.) Given the extensive analysis of this same argument by these sister courts, there is no reason for this Court to entertain this argument further.  Plaintiff's fifth objection—that the ALJ improperly relied on the opinions of state agency reviewers—is overruled.

### G.     Sixth Objection

Plaintiff's sixth objection argues that the ALJ and Magistrate Judge did not properly address Plaintiff's violent episode and resulting hospitalization.  Plaintiff argues that his violent behavior confirms the opinions of Dr. Goldstick, Dr. Chamberlain, Dr. Gollamudi, and Dr. Sparks, and that the Magistrate Judge made an error by not referring to it more extensively. (Doc. 22, 11.)  Plaintiff contends that the Magistrate Judge only made one reference to Plaintiff's violent episodes. (Doc. 22, 11.)  The Report flatly contradicts this.

Magistrate Judge Wehrman thoroughly discussed Plaintiff's violent episodes and resulting hospitalization as part of his analysis of Plaintiff's mental impairments. (Doc. 21, 7–8.) He further noted Plaintiff's reported "high risk for potential violence." (Doc. 21, 8.) He discussed that "Plaintiff related violent thoughts toward others." (Doc. 21, 9.) And he considered that "when Plaintiff was hospitalized for violent tendencies in December 2004, the examining physician noted that Plaintiff reported that 'he has not had a seizure since he was 20, he is currently now 34.'" (Doc. 21, 12.). The ALJ's discussion of this topic was similarly extensive. (Tr. 20, 21, 22, 24.) Plaintiff's violent episodes were just one factor among many in the ALJ's finding of non-disability. Again, as is required, the ALJ gave appropriate weight to the opinions of Dr. Goldstick, Dr. Chamberlain, Dr. Gollamudi, and Dr. Sparks and he gave good reasons for his findings. (Tr. 26–28.) Because both the ALJ and the Magistrate Judge properly considered Plaintiff's violent episodes, Plaintiff's sixth objection is overruled.

### H. Seventh Objection

Plaintiff's seventh and final objection argues that the ALJ and Magistrate Judge erroneously relied on reports of Plaintiff's level of daily activities (Doc. 22, 17). Plaintiff argues, "[t]he record shows that Plaintiff's daily activities did not rise to the level of supporting a finding that he could perform work activity on a regular and sustain[able] basis for 8 hours a day, five days a week." (Doc. 22, 18.)

A claimant's "activities of daily living" is only relevant within the context of the five-step sequential process under which disability claims are evaluated. 20 C.F.R. § 404.1520(a)(4). At step two in that process, an ALJ determines whether a claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found that Plaintiff

has such a "severe impairment." (Tr. 20.) With that established, an ALJ must then go on to step three to determine whether a claimant's severe impairment "meets or equals" one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). That analysis requires an ALJ to determine whether a claimant has at least two "marked" restrictions in the following three categories: "activities of daily living"; "maintaining social functioning"; and "maintaining concentration, persistence, or pace."[3] 20 C.F.R. Pt. 404, Subpt. 404, App. 1, §§ 12.02–12.10. (Restrictions are rated, from lowest to highest, as either "[n]one, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4).)[4]

Applying these rules here, for Plaintiff to be found disabled with a mental disorder, he had to have a "marked" restriction in two of the following three categories: activities of daily living; social functioning; and maintaining concentration, persistence, or pace. (Tr. 23.) The ALJ found that for activities of daily living, Plaintiff only had a "mild" restriction—two steps below "marked." In his social functioning, the ALJ found "moderate" difficulties—one step below "marked." In his concentration, persistence, or pace, the ALJ again found only "moderate" difficulties. (Tr. 24.) Because Plaintiff had to show "marked" difficulties in at least two of these three categories to be found disabled, and because "marked" difficulties were found in none of these categories, even if the ALJ rated the activities of daily living too low, as Plaintiff contends, this had no effect on the ALJ's finding of non-disability. A change in the calculation of Plaintiff's activities of daily living would have had no effect on the final outcome. Even if the ALJ had found "extreme" restrictions in Plaintiff's activities of daily living—the highest level of

---

[3] There is a fourth part to this analysis, but it is irrelevant for the present discussion.

[4] See *Rabbers v. Commissioner Social Security Administration*, 582 F.3d 647, 652–54 (6th Cir. 2009), for a similar discussion.

restriction—that still would not have changed the result of non-disability. As such, Plaintiff's arguments on this subject are not well taken.

Regardless, this Court finds no miscalculations in the ALJ's determination of Plaintiff's activities of daily living. Title 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00C.1 defines "activities of daily living" as follows:

> Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of [a claimant's] overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.1. The record reflects that Plaintiff was independent and effective in the daily living activities of cleaning (Tr. 19, 24) ("[h]e tries to help his wife out with the children and housework"; "he does yard work"), dealing with transportation (Tr. 19) ("[h]e has a driver's license, and he drives two or three times a week"), cooking (Tr. 19) ("[h]e uses a microwave to cook"), maintaining a residence (Tr. 19) ("[Plaintiff] lives with his wife and two minor sons in a house"), and grooming and hygiene (Tr. 225, 228) ("Appearance: . . . clean."; "neat & clean"). As the ALJ stated, Plaintiff "is able to leave home, drive, play pool, and socialize." (Tr. 23.) All this led to an appropriate finding of only mild restrictions in Plaintiff's activities of daily living. For the foregoing reasons, Plaintiff's seventh and final objection is overruled.

### III. Conclusion

This Court finds that the ALJ has applied the correct legal standards and that the ALJ has made findings supported by substantial evidence. Therefore, this Court must

19

affirm the ALJ's decision. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("[A] Court must affirm the [ALJ's] conclusions absent a determination that the [ALJ] has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) ("Where the record as a whole contains substantial evidence to support the [ALJ's] determination the [ALJ's] decision must be affirmed.").

Based on the foregoing, the Court finds that the decision of the ALJ is supported by substantial evidence. The Report (Doc. 21) is hereby ADOPTED. The ALJ's decision is AFFIRMED, and this matter is hereby CLOSED.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
United States District Judge